1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    T.P.S.,                               Case No.  2:25-cv-3298-JDP

12              Petitioner,

13        v.                                ORDER

14    POLLY KAISER, *et al.*,

15              Respondents,

16

17        This matter was before the court on February 5, 2026, for a hearing on respondents'

18    motion to dismiss and petitioner's motion for a preliminary injunction.  Attorney David Spencer

19    appeared on behalf of the government, and attorneys Johnny Sinodis and Oona Cahill appeared

20    on behalf of petitioner.  For the reasons stated on the record and *infra*, respondents' motion to

21    dismiss is granted, and petitioner's motion for a preliminary injunction is denied.

22                                    I.

23        Petitioner, a citizen of India who is seeking asylum, entered the United States April 17,

24    2023.  ECF No. 1 ¶¶ 23-24.  The Department of Homeland Security detained him upon entry but

25    released him on his own recognizance three days later.  *Id.* ¶ 24.  While living in the United

26    States, petitioner has worked as a truck driver, supporting his wife and two children.  *Id.* ¶ 25.  He

27    has complied with DHS reporting requirements and actively pursued his asylum claim.  *Id.*

28

                                        1

1    Petitioner was scheduled for a check-in at the Sacramento ICE office on July 2, 2025. *Id.*

2  ¶ 26.  Because there had been an increase in arrests at ICE check-ins—especially in the

3  Sacramento area—petitioner's counsel emailed the Sacramento ICE office on June 23, 2025, to

4  reschedule petitioner's check-in for a time when counsel could attend. *Id.* ¶¶ 27, 29.  On June 25,

5  2025, after receiving no response, counsel sent a second request. *Id.*  Petitioner states that "other

6  attorneys representing clients with check-ins before the Sacramento ICE sub-office have made the

7  same request and have received timely responses rescheduling their client's appointments." *Id.*

8  ¶ 30.  ICE, however, provided no response to counsel's second request.  Petitioner claims that

9  because of the "credible reports of ICE re-incarcerating individuals at their ICE check-ins" and

10  because "ICE has not responded to [counsel's] repeated emails, . . . it is highly likely Petitioner

11  [would have been] arrested and incarcerated at this appointment." *Id.* ¶ 31.

12    On June 28, 2025, petitioner filed in the Northern District of California his petition and ex

13  parte application for a temporary restraining order and preliminary injunction.  ECF Nos. 1 & 2.

14  Judge Freeman granted petitioner's application for a temporary restraining order.  ECF No. 4.

15  The court acknowledged the "unusual posture of the case," but noted that an expeditious ruling

16  was required since petitioner's "detention may be virtually certain at the time of the scheduled

17  appointment." *Id.* at 3.  The court granted the motion and ordered the government not to re-detain

18  him without first providing notice and a hearing. *Id.* at 6.

19    Petitioner attended the July 2, 2025 ICE check-in.  ECF No. 34 at 3.  He was not arrested

20  or detained; notably, the TRO was then in effect. *Id.*  A subsequent appointment was scheduled

21  for October 8, 2025. *Id.*  Petitioner appeared for that appointment, again, without being arrested

22  or detained; again, the TRO was in effect. *Id.*  A subsequent appointment has been scheduled for

23  July 8, 2026. *Id.*

24    The government claims that DHS had no intention of re-detaining petitioner at either

25  check-in.  For support, the government relies on the declaration of Jeremiah Macway, a

26  deportation officer.  ECF No. 34-1 at 1.  With respect to the July 2 and October 8 check-ins,

27  Macway attests, "[e]ven if there were no court order prohibiting Petitioner's re-detention, ERO

28  [Enforcement and Removal Operations] had no intention of re-detaining Petitioner at this

1    appointment." *Id.* at 2. Macway states that for the October 8 appointment, "[t]he decision to not

2    re-detain Petitioner was made locally within the ERO Sacramento sub-office." *Id.*

3         In November 2025, the case was transferred to this district. ECF No. 28. The government

4    has filed (1) an opposition to petitioner's motion for a preliminary injunction combined with (2) a

5    motion to dismiss. ECF No. 34. Petitioner opposes the motion, ECF No. 37, and the court heard

6    oral argument on February 5, 2026, ECF No. 38. The TRO expired after the hearing.

7                                                 II.

8         The government moves to dismiss the petition, arguing that petitioner lacks standing to

9    pursue the requested relief. ECF No. 34 at 3. The government advances two arguments. First, it

10   argues that the event giving rise to the petition—the July 2 check-in—has passed without

11   petitioner's re-detention, mooting the issue. *Id.* Second, it argues that any injury that would

12   occur in the future is, at this time, too speculative. *Id.* at 4. It relies in part on deportation officer

13   Macway's declaration saying that DHS had no intention of detaining petitioner at either of his

14   prior appointments and that DHS made that determination independent of Judge Freeman's order.

15   The government also argues that the factual circumstances surrounding petitioner's potential

16   future detention are uncertain because future developments could make petitioner's re-detention

17   appropriate and legally permissible, if not required—such as if petitioner becomes subject to a

18   final order of removal, if he violates the terms of his release, or if the applicable law governing

19   re-detention changes. *Id.* at 5.

20        Petitioner argues that he has established a threat of injury sufficient to support standing.

21   ECF No. 37. Specifically, he argues that while he was not re-detained at his July and October

22   check-ins, that fact should have little weight on any possible future re-detention because Judge

23   Freeman's TRO was in place. *Id.* at 5. Petitioner further disputes the significance of

24   respondents' claim that ICE had no past intention to re-detain him, arguing that ICE's past

25   intentions have little bearing on its future plans. *Id.*

26        Petitioner also argues that if the court were to find he does not have standing, he would

27   only gain such standing by having his rights violated by a re-detention. He states that "ICE is

28   routinely arresting and re-arresting noncitizens at their check-ins, even when custody serves no

1    legitimate purpose," that the government has made inaccurate statements in other cases and so

2    cannot be relied on, and that the government "do[es] not provide any documentary evidence

3    whatsoever to back up counsel's assertions that Petitioner is not a risk of re-arrest."  ECF No. 37

4    at 6-7.

5          Finally, he urges the court to follow cases in which other courts have granted prospective

6    relief like that requested here: *Hogarth v. Santacruz*, No. 5:25-cv-9472-SPG-MAR, 2025 WL

7    3211461 (C.D. Cal. Oct. 23, 2025); *Sikeo v. Albarran*, No. 1:25-cv-1505-KES-HBK (E.D. Cal.

8    Dec. 8, 2025); *Rodriguez Diaz v. Kaiser*, No. 25-cv-5071-TLT, 2025 WL 3011852 (N.D. Cal.

9    Sept. 26, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d. 963, 969 (N.D. Cal. 2019); *Jorge M.F. v.*

10    *Jennings*, 534 F. Supp. 3d 1050, 1055-56 (N.D. Cal. Apr. 14, 2021); *Sun v. Santacruz Jr., et al.*,

11    2025 WL 2730235 (C.D. Cal. Aug. 26, 2025); *Lam v. Albarran*, No. 25-CV-09980-NW, 2025

12    WL 3247770, at *3 (N.D. Cal. Nov. 20, 2025); *Yang v. Kaiser*, No. 25-CV-06323-JD, 2025 WL

13    2792130, at *1 (N.D. Cal. July 30, 2025); *Hernandez-Parrilla v. De Anda-Ybarra*, No. 2:25-CV-

14    01224-MIS-KK, 2025 WL 3632769, at *7 (D.N.M. Dec. 15, 2025).

15                                              III.

16          This court must ensure its own jurisdiction.  Here, where petitioner has not been re-

17    detained, where petitioner's next immigration appointment is several months away, and where

18    there is no particular indication that petitioner will be re-detained either at the upcoming

19    appointment or at another time, jurisdiction is far from self-evident.

20          Article III of the Constitution confines federal courts to deciding actual cases or

21    controversies.  "A claim is not ripe for adjudication if it rests upon 'contingent future events that

22    may not occur as anticipated, or indeed may not occur at all.'"  *Texas v. United States*, 523 U.S.

23    296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568,

24    580-81 (1985)).  The doctrine of ripeness is designed to "prevent the courts, through avoidance of

25    premature adjudication, from entangling themselves in abstract disagreements."  *Abbott Lab'ys v.*

26    *Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S.

27    99, 97 (1977)).  Petitioner bears the burden of establishing ripeness.  *San Diego Cnty. Gun Rights*

28    *Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996).

1    Other courts that have addressed ripeness in immigration cases have considered the

2    closeness of time of the petitioner's next immigration appointment, *see Diaz v. Kaiser*, No. 2025

3    WL 1676854, *1 (N.D. Cal. June 14, 2025) (granting prospective relief when the petitioner's

4    scheduled check-in was set for the same day the TRO was filed); whether the petitioner falls into

5    a specific group that has been identified by DHS as a priority for arrest, detention, or removal, *see*

6    *Y.G.H. v. Trump*, 787 F. Supp. 3d 1097, 1108 (E.D. Cal. 2025), appeal dismissed, No. 25-3549

7    (granting prospective relief where the petitioner was a member of Tren de Aragua, a group that

8    ICE has publicly expressed its intent to arrest and remove its members from the county); whether

9    the government has indicated that they plan either to detain the petitioner or not to do so absent

10    materially changed circumstances, *see Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal.

11    2019) (granting prospective relief after the government asserted that it "unreviewable

12    discretionary authority to re-arrest Ortega in the event of material changed circumstances" and

13    that "material changed circumstances already exist"); and whether the petitioner has been

14    previously re-detained, *see Somsanuk v. Bondi*, No. C26-48-MLP, 2026 WL 221139, at *4 (W.D.

15    Wash. Jan. 28, 2026) (granting prospective relief when the petitioner had already been re-

16    detained).

17    For example, in *Somsanuk*, the court granted the petitioner prospective relief, but only

18    after it found that (1) the petitioner "falls within a group that ICE has treated as a priority for

19    enforcement: noncitizens with prior criminal convictions"; (2) he was previously re-detained; and

20    (3) the government has provided "no assurance that they will refrain from redetaining him again

21    under similar circumstances."  The court further noted that "[w]ithout prospective relief, the

22    unlawful pattern that gave rise to this case could recur." *Id.*

23    But this case is unlike *Somsanuk*.  Petitioner has not presented evidence that he has any

24    prior criminal convictions or that he is a member of a group that ICE has identified as a targeted

25    group.  Neither has petitioner been re-detained.  Further, the government has provided assurance

26    that they had no intent to re-detain petitioner at the July or October check-ins.  While the

27    government's assurance has limited bearing on future intent, it is more than what was provided to

28    the petitioner in *Somsanuk*.  There is no "unlawful pattern" *yet* warranting the requested relief.

1    Petitioner's situation is more akin to that of the petitioner in *J.P. v. Santacruz*, No. 8:25-

2    cv-1640-FWS-JC, 2025 WL 2998305, at *2 (C.D. Cal. Oct. 24, 2025).  There, the petitioner was

3    incarcerated for approximately two years pending resolution of his immigration case.  *Id.* at *1.

4    The court granted J.P.'s petition challenging his prolonged detention and ordered that he be

5    provided a bond hearing.  *Id.*  At the bond hearing, the immigration judge found that J.P. was

6    neither a flight risk nor a danger and released him.  As a condition of his release, J.P. was ordered

7    to comply with DHS check-ins.  *Id.*

8    In July 2025, J.P. was stopped by police for having tinted windows, but no charges were

9    filed. *Id.* at *2.  A few days later, he was told that he needed to attend an in-person check-in to

10   meet his new case manager and that he would be required to have in-person check-ins as part of

11   his supervision.  *Id.*  J.P.'s attorney emailed ICE asking if J.P. was going to be taken into custody

12   at his in-person check-in, to which ICE responded that it was possible.  *Id.*  J.P. then filed a

13   request for a temporary restraining order to prevent his re-arrest.  *Id.*  The court granted the TRO

14   "to preserve the status quo pending."  *Id.*  After the TRO was dissolved, J.P. attended a check-in

15   but was not re-detained or re-arrested.  *Id.*

16   In addressing the petition, the court found that the petitioner had failed to allege an injury

17   or threat of injury because (1) the event giving rise to the petition (the July 29 check-in) had

18   passed, and (2) his "alleged threat of future injury is too speculative and unripe."  *Id.* at *4.  With

19   respect to the future injury, the court stated that the potential injury was too speculative because

20   petitioner had attended an appointment without the protection of the TRO, and was not re-arrested

21   or re-detained.

22   Here, petitioner has not demonstrated that the threat of injury is imminent.  First,

23   petitioner's next appointment is not for several months.  And while it is true that petitioner's

24   appointment date could be advanced, the court has no evidence from petitioner that that is likely

25   to happen.  Second, petitioner has presented no evidence that he is a member of any specifically

26   targeted group—he is neither a convicted criminal nor a foreign gang member.  Third, petitioner

27   has not been re-detained.  He attended two prior check-ins, albeit while the TRO was still in

28   effect, but he was not detained.  He also has not been detained since the expiration of the TRO on

6

1    February 5, 2026.  Finally, the government has provided some assurance that it did not have an

2    intent to arrest petitioner at his prior two appointments.  The government also has not made

3    assertions that would lead this court to conclude that petitioner's re-detention was almost certain,

4    distinguishing this case from *Ortega*.

5        The court's ruling today is a narrow one.  Petitioner's situation could change.  Even in the

6    current posture, it is not impossible that petitioner could present evidence showing that he is at

7    sufficient risk of illegal re-detention for jurisdiction to arise.  But at present, petitioner has made

8    no such showing.

9        This court is bound by Constitutional restrictions to adjudicate ripe claims.  Petitioner has

10   not shown ripeness here.  Accordingly, based on the record before it, the court finds that

11   petitioner's claim "'rests upon contingent future events that may not occur as anticipated, or

12   indeed may not occur at all,'" and thus is not ripe for adjudication.  *Texas v. United States*, 523

13   U.S. 296, 300 (1998)).

14       Accordingly, IT IS HEREBY ORDERED that:

15       1. Respondents' motion to dismiss, ECF No. 34, is GRANTED.

16       2. Petitioner's motion for preliminary injunctive relief, ECF No. 2, is DENIED as moot.

17       3. The Clerk of Court is directed to enter judgment and close this case.

18   IT IS SO ORDERED.

19

20   Dated:    March 5, 2026                         _____

21                                                   JEREMY D. PETERSON
                                                     UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

7